Joseph A. Suozzi, J.
In this wrongful death action, the jury returned a general verdict in favor of the plaintiff as against the defendant Avlis, the general contractor, in the amount of $300,000, and in favor of Modern Mason, the only other defendant sued by the plaintiff. The action arose out of the collapse on October 6, 1971, of a metal pre-engineered one-story factory building which was then under construction for Stokvis Multition Corp., the owner. The component parts of this building had been manufactured by Varco-Pruden, Inc., and the owner had contracted with Avlis Contracting Corp. as the general contractor.
Avlis subcontracted with Modern Mason, Inc. to do all the concrete and masonry work, and with A. D. Herman Construction Co. to erect the steel structure. A. D. Herman in turn subcontracted with Modular Steel to perform this work. The deceased was an employee of Modular Steel.
The plaintiff, as administratrix of the decedent’s estate and individually, sued the defendants Avlis and Modern Mason, who cross-claimed against each other. Avlis also instituted a third-party action against A. D. Herman, who in turn impleaded Modular Steel, the architect Grammas and the manufacturer Varco-Pruden. Prior to the commencement of the trial the action of Herman had been severed as against Grammas and Varco-Pruden, but not as against Modular.
On the evidence presented, the collapse of the building was attributed to at least six causes:
1. The installation of straight bolts to anchor the structure to the cement foundation, instead of L-shaped bolts.
2. The use of couplings to extend those bolts, which were short and could not be anchored without extending them because they had been placed deeper in the concrete than required.
3. The widening of the holes in the base plates where the bolts required extension so as to receive the couplings, which were wider than the bolts for which the holes had been bored.
*238 4. The insufficiency of guy or supporting wires during the erection.
5. Failure to follow proper erection practices.
6. The high winds which had suddenly appeared shortly before the collapse occurred.
It is undisputed that Modern Mason installed the bolts in the concrete floor; that Avlis had directed their use and supplied the couplings with which to extend the short bolts; and that Avlis had directed Modular Steel to widen the base plate holes to receive the couplings. As to the questions of (1) whether straight or L-shaped bolts were installed, and (2) who installed them, the jury found that L-shaped bolts supplied by Avlis were installed by Modern Mason. The jury also found that neither the method of installation of these bolts nor the engineer’s design was a proximate cause of the collapse. In addition, they found that the extension of the short bolts by use of couplings was not a proximate cause.
As to the wind, the jury concluded that it was not "of such force and velocity that it was a proximate cause”. By its remaining special findings made in response to written interrogatories, the jury found the causes of the collapse to be the following, and apportioned the fault as to each of these causes as indicated:
1. Widening of the base plate holes 10%
2. Insufficiency of guy or supporting wires during construction (of which
Avlis had notice) 30%
3. Failure of Modular Steel to follow
proper erection practices 60%
100%
The plaintiffs action against Avlis was primarily predicated on the claim that this general contractor had violated subdivision 1 of section 240 of the Labor Law, which provides as follows:
"Scaffolding and other devices for use of employees
"1. All contractors and owners and their agents, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be *239 so constructed, placed and operated as to give proper protection to a person so employed.”
This court had serious reservations as to the applicability of this section to Avlis. Nonetheless, since this presented an issue of law only and not one of fact, the case was submitted to the jury on the assumption, for purposes of the charge, that this section was applicable, and that "guy wires” were within the contemplation of "devices” referred to in the section, subject to a postverdict determination of this issue. At the same time this court erroneously submitted an interrogatory addressed to this issue of law. However, since the response to that interrogatory was consistent with the jury’s responses to the other interrogatories, no prejudice has resulted and no doubt or uncertainty has been cast on any of the other findings.
By reason of the court’s reservation of its decision as to the applicability of section 240 of the Labor Law, and the motions made by Avlis and A. D. Herman for dismissal of the plaintiff’s complaint on the ground that this section was not applicable, there is presented for the court’s determination the question of the applicability of section 240. There are also presented for determination herein the cross claims of Avlis against A. D. Herman for common law and contractual indemnification, and the similar cross claims of A. D. Herman against Modular Steel. Before proceeding to the determination of the issue of applicability of the Labor Law provision, the court will initially consider these cross claims, assuming without specifically so finding that the provision is applicable.
Avlis predicates its claim for contractual indemnification against A. D. Herman on the following indemnity provision in the contract between them: "13. That the subcontractor will indemnify Avlis Contracting Corp. and the Owner and hold them harmless from all claims, suits, actions, proceedings whatsoever which may be brought on account of injuries or damages to persons or property * * * during and because of the performance of this work.”
A. D. Herman acknowledges its responsibility to indemnify Avlis for that portion of the verdict resulting from the apportionment of 60% of the fault to Modular’s failure to follow proper erection practices, but disclaims any responsibility for the 10% portion of the claim predicated on Avlis’ own negligence in widening the base holes, and for that part of the 30% portion of the claim attributable to Avlis’ own negligence in *240 failing to do anything with respect to the insufficient guy or supporting wires, of which it had notice. With respect to this latter disclaimer, A. D. Herman urges that the court further apportion the 30% of the fault attributed by the jury to the insufficient guy wires as between (1) Avlis’ failure to do anything with respect to these guy wires, and (2) Modular’s failure to properly install them, and as a result limit A. D. Herman’s obligation with respect to this item solely to that percentage of the fault attributable to Modular’s installation of the insufficient guy wires.
With respect to the widening of the base plate holes and Avlis’ failure to take any action as to the insufficient guy wires, the jury found "active” negligence in pre-Dole terms and "primary” negligence against Avlis. Whatever the characterization, Avlis is a tort-feasor and is not merely derivatively liable, and its respective degree of fault must be weighed and determined, unless a valid agreement for contractual indemnity modifies this rule. (Rogers v Dorchester Assoc., 32 NY2d 553, 564-565; Margolin v N. Y. Life Ins. Co., 32 NY2d 149.)
In advancing its disclaimers A. D. Herman relies on the principle of law enunciated in Thompson-Starrett Co. v Otis Elevator Co. (271 NY 36, 41), as follows: "It is a general rule long established that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms.” Avlis contends that the language of the indemnity clause is clear and unambiguous, and unequivocally expresses the intention of the parties that Avlis was to be held harmless from all claims arising from the work involved in the contract even if such claims resulted from Avlis’ direct negligence.
In Margolin v N. Y. Life Ins. Co. (supra) the court, in holding that the contractual indemnity provision contained a clear expression of the unequivocal intention of¡ the parties that the third-party defendant assumed the entire risk of any liability arising from its work, found that the insurance company was entitled to indemnification from the third-party defendant for its liability to the plaintiff, even in the presence of the insurance company’s own primary negligence. The court (p 153) stated as follows: "It has long been recognized that a party may protect itself from losses resulting from its liability for negligence by means of an agreement to indemnify. The rule is restricted to the extent that indemnity provisions will not be construed to indemnify a party against *241 his own negligence unless such intention is expressed in unequivocal terms. (E.G., Kurek v. Port Chester Housing Auth., 18 N Y 2d 450.) That is not to say that the indemnity clause must contain express language referring to the negligence of the indemnitee, but merely that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances. (E.g., Levine v. Shell Oil Co., 28 N Y 2d 205, 211-212; Jordan v. City of New York, 3 A D 2d 507, 509, affd. 5 N Y 2d 723.)”
A comparison of the language of the indemnity clause here with that of a similar provision in the Margolin case leads inescapably to the conclusion that the parties here have similarly expressed their unequivocal intention to have A. D. Herman assume the entire risk of any liability arising from its work in erecting the building, the negligence of Avlis notwithstanding. Although A. D. Herman had no contractual obligation relative to the widening of the base plate holes, the jury did find that the work performed by Modular in behalf of A. D. Herman caused the collapse which resulted in the decedent’s death. (See Allman v Siegfried Constr. Co., 49 AD2d 357.)
It has been suggested that the recent enactment of a statute (General Obligations Law, § 5-322.1) declaring agreements exempting owners and contractors from liability for negligence void and unenforceable, leaves the court free to reject the authority of Margolin v N. Y. Life Ins. Co. (supra) and Levine v Shell Oil Co. (28 NY2d 205). (See Lustig v Congregation B’Nai Israel, 65 Mise 2d 1052.) However, the Legislature specifically made the new law applicable only to agreements entered into on or after August 7, 1975. (General Obligations Law, § 5-322.1, subd 2.) In the face of expressed legislative intent not to overrule existing common law retroactively, the court cannot ignore the direct authority of two holdings of the Court of Appeals. The Lustig case invited a retroactive application by the conspicuous omission of any date of application language in the statute involved there. (Cf. General Obligations Law, §§ 5-322 and 5-322.1, subd 2.) The court in Lustig also concluded that the judicial authority cited by the defendant for the prestatutory validity of the type of contract clause voided by the statute did not pass directly on the question before the Lustig court. (See Lustig v Congregation B’Nai Israel, supra, pp 1055-1056.) The Court of Appeals’ decisions *242 cited before leave no room for doubt that they are controlling and binding on this court on the very issue here.
Accordingly Avlis, under its contract of indemnity with Herman, would be entitled to judgment over against Herman for the full amount of the verdict rendered against Avlis. In view of this finding as to contractual indemnification, there is no need to consider or pass on the question of common-law indemnification.
A. D. Herman by its posttrial motion presses its claim for common-law indemnification against Modular Steel. However, before the court can consider this claim, the status of Modular Steel in this action must be clarified.
As previously indicated, when this action was assigned to this court for trial, the causes of action asserted by A. D. Herman against Modular Steel, Grammas and Varco-Pruden had been severed with respect to Grammas and Varco-Pruden, but not as to Modular. Accordingly, at the commencement of the action the cause against Modular had not been severed.
Jurisdiction over Modular, presumably a defunct and non-operating corporation, was obtained by service on the Secretary of State. Modular did not answer or otherwise appear or defend the action. During the trial communication was had with an insurance carrier which was representing Modular in an action in another county arising out of the same incident, and a representative of that insurance company was present for discussions relevant to Modular’s status. In the meantime, no affirmative action has been taken by anyone in Modular’s behalf to open the default or to otherwise seek an opportunity for Modular’s day in court.
During the trial the court, on its own motion, severed Herman’s action against Modular, over Herman’s objection. At varying stages of the trial thereafter counsel for Herman reiterated its motions to restore the action against Modular, and the court reserved decision, by indicating that Modular’s default made it unnecessary to decide that issue until after the verdict was rendered. Restoration has been urged not only on the grounds of prejudice to Herman, but also for reasons of judicial economy and avoidance of a potentially inconsistent verdict at a later trial of this portion of the action. In view of the jury’s finding as to the architect’s design, which was favorable to the architect Grammas, and in the absence of any claim or proof of any deficiency in the component parts supplied by the manufacturer Varco-Pruden, the only other *243 action requiring determination is A. D. Herman’s claim against Modular.
On reflection, and with the benefit of hindsight, it is not unlikely that this court’s severance of the action as against Modular was erroneous and ill-advised. (See Huttick v Bio-graph Realty Corp., 37 AD2d 597.) Since the court has the power to vacate a previously granted severance when convenience and the avoidance of prejudice mandate, this error can be nullified by vacating the prior severance of the claim of Herman against Modular and by the restoration of Modular Steel as a fourth-party defendant. (See Lafredo v Baltic Amer. Line, 244 App Div 748; Zara Constr. Co. v State of New York, 42 Misc 2d 266, mod 42 Misc 2d 737, 739.) By a restoration, even at this stage, the defendant Modular is placed in the identical posture that it was in at the commencement of the trial and would have been in if this court had not severed this claim. The proof presented is identical to that which would have been presented if this defendant were an unsevered party, albeit a defaulting one. Likewise, the special findings which the jury was asked to make, and did make, would have been the same if no severance had been granted.
Under these circumstances it does not appear that the restoration of Modular Steel as a fourth-party defendant, even at this late stage, would result in any more or less prejudice than it has caused itself by failing to appear and answer and to defend this action. To the contrary, the court’s refusal to restore Modular as a fourth-party defendant would only serve to unduly prejudice the fourth-party plaintiff A. D. Herman, and would necessitate unnecessary and more prolonged litigation. Conceivably the restoration may serve to expedite the final disposition of this phase of the litigation. Accordingly, in the exercise of its discretion, this court now vacates its prior severance and restores Modular Steel as a fourth-party defendant, and proceeds to determine Herman’s claim against Modular for common-law indemnification.,
The evidence clearly shows that Herman had contracted with Modular to erect the steel structure, and that the collapse occurred during the course of its erection by Modular. Based on the jury’s special findings, it is also clear that 90% of the fault has been apportioned to conditions or causes for which Modular was responsible. Damages having been found by the jury in the amount of $300,000, and fault having been apportioned as aforesaid, and Modular’s default having pre *244 eluded any defense to this apportionment, this court can now apportion the damages predicated on this apportionment of fault found by the jury for which Modular is liable to A. D. Herman, to wit, $270,000. Accordingly, A. D. Herman would be entitled to judgment over against Modular for this amount.
As indicated earlier, the cross claims have been determined on the assumption that subdivision 1 of section 240 of the Labor Law was applicable on the facts disclosed by the evidence, without the court’s having considered or passed on that question. It is to this issue of law that the court will now address itself.
The violation of this section upon which the plaintiff relies for imposing liability on the general contractor is based on the contention that the guy or supporting wires which the jury found to be insufficient are "devices for the use of employees” within the contemplation of this amended provision. Prior to its amendment in 1969, liability for a violation of this section was limited to "a person employing or directing another to perform labor of any kind”, and did not extend to "all contractors and owners and their agents”. As is indicated by the memorandum accompanying this amendment (NY Legis Ann., 1969, p 407), the legislative intent of this revision was to place "ultimate responsibility for safety practices at building construction jobs where such responsibility belongs, on the owner and general contractor.”
The leading case which has construed this provision since its amendment, and on which the plaintiff relies as authority for the imposition of liability on the general contractor, is Rocha v State of New York (77 Misc 2d 290, affd 45 AD2d 633). There the Appellate Division, Third Department, affirmed a judgment of the New York State Court of Claims which held the defendant liable as the owner for the injuries sustained by an employee of a subcontractor which had constructed the scaffold from which the employee fell when a plank broke. Under the interpretation of subdivision 1 of section 240 prior to its amendment, a general contractor was not held to be responsible for such injuries. (Deso v Albany Ladder Co., 26 AD2d 182.)
As the memorandum of the Trial Judge in Rocha v State of New York (supra) clearly indicates, "the amendment was designed to extend the existing liability imposed under section 240” (p 296, emphasis supplied). In affirming this decision, the Appellate Division defined the scope of the amendment as *245 follows: "A study of the cases analyzing various sections of article 10 of the Labor Law compels us to conclude that it was the intent of the Legislature, in amending section 240 of the Labor Law, to impose a nondelegable duty on an owner, as such, in order to bring that section into line with sections 241 and 241-a where such duty already existed” (p 636).
The interpretations of sections 241 and 241-a have consistently held that the nondelegable duty imposed on an owner or general contractor contemplated by the provisions of these statutes did not "include responsibility for an injury which arises through the negligent acts of a subcontractor occurring as a detail of his work. ” (Emphasis supplied.) (Scavone v State Univ. Constr. Fund, 46 AD2d 895, 896; Rusin v Jackson Hgts. Shopping Cent., 27 NY2d 103, 107; Leahy v Botnick, 35 AD2d 898.)
The holding in Rocha (supra) itself makes it abundantly clear that these interpretations have neither been overruled, modified nor limited by the amendment of subdivision 1 of section 240. As was stated in Deso v Albany Ladder Co. (supra, p 185), "While section 240 is to be liberally construed, that does not mean that it should be implemented by decisional law so as to establish a cause of action and a right of recovery not contemplated by the Legislature.” The retention in the amended provision of the identical language of the title and the body of the prior provision leaves no doubt that the distinction implicit in this provision between devices for use of employees during the performance of the work, and devices which are details of the work being performed, still prevails.
The decision reached in Rocha v State of New York (supra) was inescapable in view of the specific reference to scaffolding, both in the title and body of subdivision 1 of section .240, as a device "for the use of employees”, to give proper protection to a person during the course of his employment "in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure.” However, whether "guy wires” are "braces” or one of the "other devices for the use of employees” within the contemplation of the statute, as the basis for the imposition of liability on a general contractor, is neither as obvious nor as clear-cut as in the case of scaffolding and hoists, stays, ladders, slings, hangers, blocks and pulleys. The plaintiff has also called this court’s attention to Myers v Cornell Univ. (46 AD2d 839). Notwithstanding the reference therein to interpretations of section 240, that case dealt *246 entirely with section 241 of the Labor Law, and the language of that decision does not cast any light on the issue of whether or not guy wires are "braces” or "other devices” within the contemplation of section 240.
A review of the legislative history of this provision discloses that the provision in its present form underwent several revisions from the form in which it was originally enacted as section 18 of the Labor Law by chapter 31 of the Consolidated Laws of 1909, which read as follows: "§ 18. Scaffolding for use of employees. A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged.”
Between 1909 and 1921, when section 18 was renumbered as section 240 of the Labor Law, the following changes were effected:
1. The title was changed to "Safe scaffolding required for use of employees.
2. The list of contrivances was expanded to also include "slings, hangers, blocks, pulleys, braces, irons and ropes.”
3. "other mechanical contrivances which are unsafe, unsuitable or improper” was changed to "other mechanical contrivances”.
By chapter 50 of the Laws of 1921, section 18 became section 240. Except for this renumbering, the title and text of this new section 240 remained identical with that of section 18 as amended to that date. The word "demolition” was added by chapter 603 of the Laws of 1930.
In 1947 this provision was further amended (L 1947, ch 683) in that the title became "Scaffolding and other devices for the use of employees”, and "other mechanical contrivances” was replaced with "other devices”. The legislative intent of this amendment was expressed in a memorandum in the New York State Legislative Annual (1947, p 188) as follows: "Principally because of its title, the requirements of section 240 for safe scaffolding, hoists, ladders and other mechanical contrivances have always been construed as limited to scaffolding *247 and devices in connection therewith. The bill proposes to [b]roaden this application, in accordance with both modern construction practices and what is believed to have been the original intent of this section.”
However, even before this 1947 amendment, the decisional law had broadened the application of sections 18 and 240 to include appliances which had no connection with scaffolds. In Muench v Steel & Masonry Contr. Co. (155 App Div 409), a guy rope on a hoisting apparatus used in subway construction was deemed an appliance within the contemplation of section 18 because of its use in connection with the hoisting apparatus (which was specifically enumerated in the statute), even though the apparatus had no connection with a scaffold.
As was previously indicated hereinabove, subdivision 1 of section 240 in its present amended form is identical in title and text to the first paragraph of the 1947 provision except for the substitution of the words "All contractors and owners and their agents” for "A person employing or directing another to perform labor of any kind.”
Notwithstanding the doubts which presumably persisted until the 1947 amendment as to the applicability of this provision to contrivances which were not used in connection with scaffolding, as this court reads the legislative history of this section there never was any doubt of the legislative intent to limit its application to devices which are furnished or erected for the use of employees in the performance of their work. Neither from the change in the title, nor the expansion of the enumerated list of devices, nor the extension of liability to a new class of persons, can this court detect or discern any intention to remove this limitation as to the class of devices to which this section is applicable. So that as this court construes subdivision 1 of section 240, it is applicable only to those devices which provide a safe place for employees, in the performance of their labor, to work on or from, or which serve as a means of transporting either the employees or materials to the particular area on the job site where the work is in progress. There is not the slightest hint or suggestion that this section is to be applied to devices which constitute a part, or detail, of the work being performed.
The erection guide provided by the manufacturer of this prefabricated structure contains recommended procedures for erecting the structure. Among the recommended procedures is to first "erect a braced bay”, which is described as the first *248 interior bay from either end of the building. As part of the procedure of erecting this braced bay, the guide also recommends the use of support lines to hold the frame in place until the braced bay is completed. Except for this recommended use of guy wires, the guide makes no other reference or suggestion as to the use of guy wires.
From the evidence it does not appear that in the erection of this structure, the recommended procedure of first completing a braced bay was followed. Nonetheless, guy or support wires were used during the course of construction, which the jury found to be insufficient. The primary function of these wires was to hold component parts in place until such time as the parts, or the structure itself, were more permanently secured or anchored by bolting of the parts or by some other method of permanent attachment. At no time were these wires intended or actually used by the employees as an appliance or device in the performance of their work. As the erection guide itself makes clear, the use of guy wires was a part of the erection procedure. These guy wires were not furnished or erected as a place to work or as a means to get the employees or materials to a particular area to perform the work. They constituted a detail of the work which the subcontractor undertook to perform and was performing when the collapse took place.
The fact that these wires did not become a permanent part of the structure itself and were only temporary in nature does not alter their primary function or purpose, and does not qualify them as a device for the use of employees contemplated by the statute. The use of these wires is not dissimilar from the insertion of loose bolts temporarily, as a means of holding component parts of the structure in place and preventing their slipping or falling down until these parts are permanently bolted or otherwise secured. The use of these bolts in this loose condition is as temporary as the use of guy wires. On the record here, it is most unlikely that the plaintiff would contend that the general contractor would have been liable if the collapse was in any way due to the subcontractor’s failure to insert the bolts in this loose fashion, or if the collapse was due to a breakage in the bolts while so inserted.
It is fair and reasonable to conclude that the insufficiency of the guy wires, which the jury found, was merely one of the several departures by the subcontractor from proper erection practices which formed the basis of the jury’s finding that *249 Modular had not followed proper erection practices. Except as to the guy wires, the plaintiff makes no claim against the general contractor on the basis of Modular’s failure to follow proper erection practices in any other respect. Thus the plaintiff implicitly concedes that except as to the guy wires, all of the procedures followed by the decedent’s employer were details of the work to be performed, and were not within the scope of the general contractor’s liability under any section of the Labor Law or common law. On this record the court can find no basis for treating the insufficiency of the guy wires any differently than any other failure on the part of Modular to follow proper erection practices.
For these reasons this court concludes that a guy wire is neither a "brace” nor one of the "other devices” within the contemplation of subdivision 1 of section 240, and that the insufficiency of these guy wires does not constitute a violation of this section by reason of which liability may be imposed on the general contractor.
The jury having found that the decedent was guilty of contributory negligence, liability against Avlis, the general contractor, cannot be sustained on the basis of its negligence, as found by the jury, for widening the base plate holes, which the jury found was a proximate cause of this collapse.
Accordingly, on the basis of the foregoing, the motions by Avlis and A. D. Herman to set aside the jury verdict must be and hereby are granted. Further, Avlis is entitled to judgment dismissing the complaint.
The dismissals of the plaintiff’s complaint against Modern Mason by the jury’s verdict, and against Avlis by this court, render the cross claims and the third- and fourth-party actions academic, and each of them is respectively dismissed, notwithstanding anything to the contrary hereinabove stated.