Arlene A. FLOOD and Bernard Flood, Plaintiffs,

v.

RE LOU LOCATION ENGR., Re Lou Leasing Engr., Denis Messier and Japan Line Ltd., Defendants.

Daniel J. FLOOD, an infant by Eugene J. Flood, the guardian of his property, Plaintiff,

v.

RE LOU LOCATION ENGR., Re Lou Leasing Engr., Denis Messier and Japan Line Ltd., Defendants.

RE LOU LOCATION ENGR., Re Lou Leasing Engr., Denis Messier and Third-Party Plaintiffs,

v.

Arlene A. FLOOD and Bernard A. Flood, Third-Party Defendants.

Nos. 76 Civ. 2305, 77 C. 3 (JBW).

United States District Court, E. D. New York.

March 4, 1980.

Gillen & Caliendo, New York City, for defendants Re Lou Location, et al.

Kirlin, Campbell & Keating, New York City, for third party plaintiff Japan Line Ltd.

McLaughlin, McLaughlin & Neimark Brooklyn, N.Y., for plaintiffs Daniel J.

Flood, Infant by Eugene J. Flood, Guardian.

Jerome Edelman, P. C., Brooklyn, N.Y., for plaintiffs Arlene A. Flood and Bernard A. Flood.

WEINSTEIN, District Judge.

Japan Line Ltd., having lost after trial on the issue of liability, settled without an adjudication of damages. It now seeks recovery against codefendants. As indicated below, its claim must be characterized as one for contribution rather than indemnification; New York Law precludes recovery.

## I. FACTS

As a result of an accident in June 1976, claims for relief were brought by Arlene A. Flood and Bernard A. Flood against Re Lou Location, Engr., Re Lou Leasing, Engr., Denis Messier and Japan Line Ltd. and on behalf of Daniel J. Flood, an infant, against the same defendants. Defendant Denis Messier was the employee of defendant Re Lou Ltd., an independent contractor; he was the operator of the tractor trailer which struck the car owned and operated by Arlene Flood. Daniel Flood was a passenger in the car. Defendant Japan Line Ltd. was the owner of two containers being carried by the tractor trailer pursuant to a contract with Re Lou.

Prior to trial, defendants Re Lou and Denis Messier settled pursuant to the General Obligations Law of New York (GOL) with the plaintiffs for $450,000. At the time of settlement, Re Lou and Messier moved to dismiss Japan Line Ltd.'s cross-claim against them. They argued that section 15–108 of the GOL provides a settling tortfeasor with complete immunity from any claim of contribution by any joint tortfeasor. Japan Line Ltd. argued that its claim was based not on contribution but on indemnity making section 15–108 inapplicable. The court denied the motion as premature since the nature of the negligence, if any, for which Japan Line was liable had not yet been established and the question of whether the cross-claim was for indemnity or contribution could not yet be answered.

A trial of the liability issue was commenced in June 1979. Re Lou, still a party to the action, chose not to be represented by counsel at the trial. The jury returned a verdict which apportioned liability as follows: Japan Line Ltd.—20%; Re Lou and Messier—55%; and Arlene Flood—25%.

Because of the complexity of the case, the court remained uncertain as to whether the jury's verdict indicated that Japan Line was directly negligent in its hiring of Re Lou or, despite the court's instruction to the contrary, vicariously liable because of the negligence of Re Lou and Messier. Prior to discharging the jurors, the court, in an effort to resolve this uncertainty, engaged in the following discussion with counsel:

THE COURT: I can put to the jury . . . and that would be my inclination, the issue of foreseeability, specifically that is whether the negligence of Japan included foreseeability that a negligent driver would be put in charge of the truck.

I say I think that probably will be included in the verdict as it's already handed down, but if Japan wants me to bring the jury in to ask them that question, I'll do it. I'll give you a chance to sum up again on that point.

Do you want me to do that? The jury is coming in tomorrow at ten o'clock.

MR. RYAN [Japan Line]: Your Honor, I firmly believe at this time that that would result in undue confusion.

THE COURT: You don't want me to do anything with the jury?

MR. RYAN: No.

THE COURT: You want me to discharge the jury?

MR. RYAN: That's correct.

THE COURT: That's against my inclination, but if that's what you want, I'll hear from the plaintiffs.

MR. JEROME EDELMAN: If he doesn't want it, we don't want it.

. . . . .

MR. SHEAN [Mrs. Flood]: I go along with that.

THE COURT: You don't want the jury in tomorrow?

MR. SHEAN: No.

THE COURT: Re Lou is not here. They've absented themselves. . . . I would assume Re Lou would take the same position as the mother [Mrs. Flood]. I have no alternative, therefore, but to follow the request of all parties against the better judgment of this Court . . . I believe I'm bound now by the unanimous request of the parties; I will discharge the jury.

Transcript, June 12, 1979, pp. 7–9.

Before the scheduled trial on damages, Japan Line Ltd. settled with the plaintiffs in the amount of $900,000.

## II. LAW

Prior to the adoption of a new Article 14 of the CPLR in 1974, a tortfeasor who settled with the plaintiff would have been subject to an action for an apportionment of damages. The liability of the settling tortfeasor was altered so that now a release given in good faith by the injured person relieves the settling tortfeasor from liability to any other person for contribution. The claim of the injured party against the other tortfeasors is reduced by the amount stipulated by the release, or the amount of the consideration for the release, or the amount of the released tortfeasor's equitable share of the damages, whichever is greatest. *See* GOL § 15–108 and CPLR § 4533–b. Section 15–108(b) of the GOL reads:

Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

In addition, section 15–108(c) of the GOL provides that a pre-verdict settlement acts as a waiver of the right to contribution.

Waiver of Contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.

Thus, a pre-verdict settlement acts both as a bar to any claim for contribution made by a joint tortfeasor against the settling tortfeasor and as a waiver by the settling tortfeasor of all his claims for contribution. Post-verdict settlements present different considerations. *See State v. County of Sullivan*, 54 A.D.2d 29, 34, 386 N.Y.S.2d 253, 257 (1976) (Korman, P. J. dissenting), *reversed*, 43 N.Y.2d 815, 402 N.Y.S.2d 397, 373 N.E.2d 291 (1977) (opinion adopting dissent). The Japan Line settlement, however, occurred after a decision on liability but prior to a finding with respect to damages and entry of judgment. Thus, it is a prejudgment settlement subject to section 15–108.

If Japan Lines were a joint tortfeasor its negligence would be deemed active and contribution could not lie. As Judge Duffy noted in *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 n. 6 (S.D.N.Y. 1979):

The essence of contribution, therefore, is the presence of joint tortfeasors. The term "joint tortfeasors" means that two or more persons are the joint participants or joint actors in the wrongful production of an injury to a third person. There the act of each is his own act but the acts are concurrent in, or contribute to, the production of the wrongful injury, so that each actor is, on his own account, liable for the resulting damages.

■ Although the GOL forecloses contribution, a distinction between contribution and indemnification remains and, in appropriate circumstances, a settling tortfeasor may continue to pursue his claim for indemnification despite a pre-verdict settlement. *See Riviello v. Waldron*, 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979); *Gorin v. Deluxe Van Lines, Inc.*, 421 N.Y.S.2d 157 (Sup.Ct. Nassau Co.1979).

■ The New York State Court of Appeals re-examined the continuing vexing post *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) problem of characterizing negligence in *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973). In *Rogers*, plaintiff had been injured in an elevator located in defendant Dorchester's

building. Defendant Dorchester, owner of the building, had hired Otis Elevator as an independent contractor, to maintain its elevators. The jury found the elevator company liable. The Court of Appeals explained that liability of the owner was based upon passive negligence and, therefore, was vicarious, thus permitting the owner's claim for indemnification. The Court stated:

> In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or, as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it.

Thus, the New York State Courts still maintain their historic distinction between direct and vicarious liability and continue to rule that if a defendant is actively (directly) negligent then the claim is for contribution but if the defendant is passively negligent and therefore vicariously liable then its claim is for indemnification. *See Heinsohn v. Putnam Hospital*, 65 A.D.2d 767, 409 N.Y. S.2d 785 (2d Dep't 1978); *Driscoll v. N. Y. C. Transit Auth.*, 53 A.D.2d 391, 385 N.Y. S.2d 540 (1st Dep't 1976).

The present case reveals the difficulty of applying the distinction. Plaintiff's pre-trial memorandum asserted that Japan Line was both vicariously liable and directly liable. Japan Line in its pre-trial memorandum argued that, because it did not own, operate, manage or control the truck, the driver or the trucking company, it was not liable for any act or omission of Re Lou or Messier. It made no objection, as a matter of law, to plaintiff's claim of direct liability. At that stage of the litigation, therefore, Japan Line perceived its only potential liability as active (direct), not passive (vicarious).

The independent status of Japan Line was emphasized by the court in its charge to the jury:

> As a matter of law . . . Japan Line, Ltd., hired a trucking company as an independent contractor. This means that you may not hold Japan Line, Ltd. responsible for the negligence of the broker or the trucking company or Messier, as its employee. That is, the truck driver was not, in effect, the employee of Japan Line on the theory of what we call respondeat superior, in other words, on the theory that Japan Line was supervising either Boclacon, Re Lou, or the truck driver. There was not that relationship.
>
> .  .  .

Transcript at 26 (June 7, 1979). Negligent hiring was the theory on which the case proceeded; the jury instructions were designed to "favor  .  .  .  the defendants." Transcript at p. 15, June 7, 1979. As might be expected, vigorous objection to this portion of the instructions was voiced by plaintiff's attorneys. Japan Line did not object. Transcript at pp. 13–18, June 7, 1979.

■ As already pointed out, after the jury returned its verdict finding Japan Line liable for 20% of the damages, the court sought a more precise finding from the jury but the parties were opposed. The jury's finding, in this context, must be viewed as a determination that Japan Line was actively negligent in its hiring, that it should have foreseen the possibility of a negligent driver operating Re Lou's truck in a negligent manner, that Japan's negligence was a proximate cause of the plaintiff's injuries and that Japan Line Ltd. was directly liable for 20% of the damages. Such a finding precludes a claim for indemnification.

Characterizing the claim as one for contribution or for indemnification has harsh consequences. If it is for contribution then the settling tortfeasor is statutorily barred from recovery and Japan Line would carry the burden of paying the entire $900,000. On the other hand, if the claim is for indemnification, Re Lou, in addition to the $450,000 it paid in settlement would be liable for an additional $900,000, although the jury determined that it should be accountable for only 55% of the damage; and, Japan Line, after a jury finding that it used less than good judgment in its hiring of the independent contractor, would escape with no monetary loss.

The ideal resolution of the problem would seem to lie in an equitable apportionment. Fortunately, in most cases joint settlement negotiations lead to just this kind of fair division. The independent and sequential settlements in this case create the harsh results. The consequence of the statutory directives, the case law and the settlement activities of the parties is that the court is forced to choose between indemnification or contribution. There is now no way to split the difference. The ambiguities that make the resolution of the present motion so difficult are, in large part, attributable to the reluctance of the parties to cooperate in settlement negotiations or to permit a more precise finding by the jury.

### III. CONCLUSION

Apportionment of 20% liability to Japan Line Ltd. represented a finding of direct liability. Japan Line's claim is for contribution not indemnification. The motion to dismiss Japan Line Ltd.'s cross-claim is granted.

So ordered.