Breitel, J.
In a personal injury negligence action against the owner and manager of an apartment building and an elevator maintenance company for injuries sustained when plaintiff tenant was struck by the automatic door of a self-service elevator, the injured plaintiff, the owner, and the manager appeal. The principal issue is whether evidence that the door had malfunctioned in the past, coupled with the elevator company’s undertaking to perform all inspection and maintenance, was sufficient to permit the jury to infer negligence by the elevator company.
*557 After a jury trial plaintiff received a verdict and judgment of $80,000 against the owner, Milstein Associates, the manager, Milford Management Corp., and the maintenance company, Otis Elevator Company. A cross claim by the owner and manager against the elevator company, tried by stipulation without a jury, was dismissed by the trial court. The Appellate Division, two Justices dissenting, modified the judgment by dismissing plaintiff’s complaint against the elevator company. Hence, the appeals by plaintiff, the owner, and the manager against the elevator company as respondent.
The order of the Appellate Division should be modified by reinstating the judgment against the elevator company, and granting judgment in favor of the owner and manager on their cross claim against the elevator company. There was evidence that the door had malfunctioned during the six months preceding the accident from which the jury might infer that the elevator company negligently performed its undertaking to repair and maintain the elevator. Since the elevator company had agreed to perform all required maintenance, negligence by the owner and manager in the performance of their nondelegable duties to maintain the elevator arose solely through the acts or omissions of the elevator company. Hence, it was error to dismiss the cross claim by the owner and manager against the elevator company.
Plaintiff Adele Rogers, 71 years old, was injured in July, 1970 when she was struck by the automatic door of a self-service elevator in the Manhattan apartment building where she lived. The building was owned by defendant Milstein Associates, a partnership, and managed by defendant Milford Management Corp. Otis Elevator Company, under a written agreement with Milford as agent for the owner, undertook to service all elevators in the building. The agreement is detailed below.
Plaintiff testified that as she entered the elevator, the automatic door began to close. She stated that she put up her hand and touched the rubber safety edge, designed to retract the door upon contact, but the door continued closing and knocked her to the floor. She sustained two fractures of the pelvis.
Another tenant, Urey Robinson, testified that in the six months before the accident, the elevator door failed to retract ‘[1] many times ’ ’ and at least more than twice. Immediately after the *558 accident, Robinson arrived at the ground floor in the same elevator and he testified that “ the door kept going back and forth and you couldn’t really get out.”
Plaintiff also testified that in the six months preceding her accident the door would begin closing normally, then about halfway it would speed up and close with a ‘ ‘ bang ’ ’. She stated that the elevator had been out of service and was repaired about six months before the accident.
A police officer, called after the accident, testified that he tried to enter the elevator as the door closed, the door pushed him and it did not retract. A building employee, however, testified that he tried the door after the accident and it worked properly.
By its written agreement with Milford, Otis undertook to “regularly and systematically examine, adjust [and] lubricate” elevator machinery, to “ repair or replace” parts if required in Otis ’ judgment, and to ‘ ‘ use all reasonable care to maintain the elevator equipment in proper and safe operating condition.” The agreement provides that all equipment shall remain within the ‘ ‘ possession or control ’ ’ of the owner and that “ [u]nder no circumstances shall we [Otis] be liable for consequential damages.” The consideration for Otis’ service of the nine elevators in the building was $1,310 per month, or $15,720 per year.
An Otis maintenance examiner, Roger Anarella, testified in pretrial examination that his procedure was to check all elevators at least twice or three times each week to see that the doors were functioning, the leveling was proper, and the gears were oiled. These routine examinations were supplemented by a yearly supervisor’s inspection of each piece of equipment. The last supervisor’s inspection was made almost six months before the accident.
Anarella, the maintenance examiner, further testified at the examination that the rubber safety edge was designed to cause the elevator door to retract at11 the slightest pressure ’ ’ and said that ‘ ‘ a finger ’ ’ should cause the door to retract. Anarella stated that he checked the elevator after the accident and found nothing wrong with the door.
Harold M. Gottlieb, employed by both Milstein and Milford to manage the building, testified that none of the building employees were allowed to perform repairs on the elevators. *559 In case of trouble, they were instructed to shut down a malfunctioning elevator and Otis was to be called. In short, all maintenance of the elevators was handled exclusively by Otis specialists.
The jury was charged that Otis was under a duty to exercise reasonable care in inspecting elevators for defects and in repairing defects to make the elevators reasonably safe for use. The jury was also charged that the doctrine of res ipsa loquitur applied to the owner and manager, but not against Otis.
An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found (Smith v. Jay Apts., 33 A D 2d 624, mot. for lv. to app. den. 26 N Y 2d 609; Koch v. Otis Elevator Co., 10 A D 2d 464, 467; Hoggard v. Otis Elevator Co., 52 Misc 2d 704, 705, affd. 28 A D 2d 1207; see 26 Am. Jur., Elevators and Escalators, § 17; 19 N. Y. Jur., Elevators and Escalators, § 37, 1973 Supp., at p. 17; Ann., Automatic Elevator—Liability, 6 ALR 2d 391, § 3). Otis concedes that this is the applicable rule, but contends that there was no evidence of acts or omissions by Otis to sustain a finding that Otis negligently performed its duty , of maintenance.
No direct evidence of any act of negligence by Otis was introduced. Nor, as noted, was the doctrine of res ipsa loquitur applied against Otis. But, res ipsa loquitur aside, circumstantial evidence of sufficient probative force may permit a jury to infer negligence (Markel v. Spencer, 5 AD 2d 400, 403, affd. 5 N Y 2d 958; Wells v. Thaber Realty Co., 268 App. Div. 751). Thus, too, in Otis Elevator Co. v. Robinson (287 F. 2d 62 [CA5]) where plaintiff was injured when an elevator fell at an excessive speed and then came to a sudden stop, evidence of prior complaints to and maintenance checks by the elevator company was held sufficient circumstantial evidence of negligent repair, without reliance on the doctrine of res ipsa loquitur (287 F. 2d, at p. 65). In finding the circumstantial evidence sufficient to permit an inference of negligence, the court reasoned:
“ Otis was hired because it knew elevators. The jury may have reasoned that until Otis could come in and identify the cause (or all possible causes) and then show why this could not *560 reasonably have been discovered, the failure of the expert to locate and correct the source of trouble showed neglect in the performance of the work in which it claimed pre-eminent competence. * * *
‘6 There was thus a solid basis for jury inference from circumstances which have a compelling attraction in the ordinary experience of men. That was enough.” (287 F. 2d, at pp. 65-66).
Although generally referring to the doctrine of res ipsa loquitur, the courts have, independently of the classic doctrine requiring in its purest form exclusiveness of control, possession, and operation of1 harm-causing instrumentalities,[1] often found circumstantial evidence sufficient to permit the inference of negligent inspection and repair against an elevator maintenance company. In Beinhocker v. Barnes Development Corp. (296 N. Y. 925, mot. for rearg. den. 297 N. Y. 472), plaintiff fell and was injured when a safety ‘ ‘ interlock ’ ’ device failed to function and the door opened even though the elevator was not at the floor. The elevator company had agreed to maintain the elevator and had complete charge over maintenance of the interlock device. These circumstances were held to support an inference of negligence by the elevator company (see, also, Kelly v. Watson Elevator Co., 309 N. Y. 49; Ames v. Watson Elevator Co., 303 N. Y. 732). In Pugh v. Weber (29 A D 2d 567), plaintiff was injured when she tripped and fell as she was leaving the elevator. The elevator had stopped several inches below the floor level and the door closed rapidly as she attempted to leave. There was evidence that the elevator had not properly leveled for a few weeks before the accident and that the elevator company had recently inspected it. In sending the case back for a new trial, the court held the evidence sufficient to allow the jury to find negligence by the elevator company.
In resisting liability in this case, Otis would rely on Koch v. Otis Elevator Co. (10 A D 2d 464, supra). In the Koch case, the elevator stopped between floors and plaintiff was injured when he attempted to climb out of the elevator without assistance. There was evidence that the cause of the last stoppage was a blown fuse. True, the elevator had stopped several times *561 before, but had been repaired by cleaning certain devices and without resetting the fuse. The court held that this evidence, without more, was insufficient to establish negligence by the company (10 A D 2d, at p. 467). In the Koch case, no cause was shown why the fuse had blown, nor was it shown that the fuse had ever blown before. In this case, on the other hand, there was evidence from plaintiff and the tenant Robinson that the door had malfunctioned before in a way directly or indirectly related to the accident. In any event, the issue of liability here is controlled by the cited holdings of this court (see, e.g., Ames v. Watson Elevator Co., 303 N. Y. 732, supra; Beinhocker v. Barnes Development Corp., 296 N. Y. 925, supra). Moreover, in a case closer to this than Koch in associating the accident with prior unexplained malfunction, liability against the maintenance company was sustained (Smith v. Jay Apts., 33 A D 2d 624, supra). There, plaintiff was injured after the elevator failed to level properly, and there was evidence that the malfunction had occurred on a previous occasion. It was held that the jury could infer negligent maintenance and repair by the elevator company under an instruction of res ipsa loquitur.
The circumstantial evidence in this case was sufficient to permit the jury to infer negligence by Otis. Otis had undertaken, for a substantial fee, to handle exclusively all maintenance on the elevator. It was thus in exclusive control of maintenance, although it obviously was not in exclusive continuous control of the possession and operation of the elevator. The owner and manager were ill-equipped to service the complicated, delicate, and potentially dangerous elevator apparatus. In case of trouble, their employees were instructed to leave all repair work to Otis. There was evidence that the elevator door malfunctioned on this occasion and on prior occasions. It was Otis’ procedure to have an employee examine each of the nine elevators in the building, including the doors, at least two or three times a week. The door was designed to retract at the slightest pressure, yet there was evidence accepted by the jury that it did not stop, but struck plaintiff with sufficient force to knock her to the floor. Whether the door could have malfunctioned, absent negligence in the inspection and maintenance by Otis, was properly a question for the jury, and their verdict against Otis should not have been disturbed (see First Nat. Bank of Ariz. v. Otis Elevator *562 Co., 2 Ariz. App. 80, 84, mot. for rehearing den. 2 Ariz. App. 596).
Defendants Milstein and Milford contend it was error to dismiss their cross claim over against Otis. Their liability arose solely by reason of their nondelegable duty to plaintiff to maintain and repair the elevator. Otis, however, voluntarily undertook to handle all maintenance and inspection. Therefore, absent actual notice of a defect to Milstein or Milford and their failure to notify Otis of the trouble, actual negligence, if found, must have been attributable solely to acts or omissions by Otis. There was no evidence of actual notice to the owner or manager and consequently no failure on their part to notify Otis. Nor did any of the Otis records offered show a “ call hack ” based on notice of the malfunction. The case then turns simply on recurring malfunction attributable solely to defective maintenance for which notice, actual or constructive, to Otis was not necessary to establish its liability. Because Otis was charged with continued maintenance, the negligent performance of which accounted circumstantially for the accident, its responsibility was different from that of the owner or manager, whose liability must have been preconditioned on notice, actual or constructive (e.g., Alts v. Leiberson, 233 N. Y. 16, 18; Rodrigues v. Levin, 36 Misc 2d 239, 240).
Turning to the issue of liability over, or the owner’s right to indemnification, in the Beinhocker case (296 N. Y. 925, supra) the plaintiff recovered a judgment against both the owner and the elevator company. The owner had cross-claimed against the elevator company. The trial court had instructed the jury that if it found in favor of plaintiff on the main cause of action it must find in favor of the owner on the cross claim since actual negligence, if there were any, was that of the elevator company. The judgment over was affirmed by this court (Beinhocker v. Barnes Development Corp., 296 N. Y. 925, supra). The charge was held proper because between the owner and the company, the company assumed the full duty to maintain the elevator and the owner had no functions to perform, as between it and the elevator company (see, also, Kleinman v. Delfus Realty Corp., 25 Misc 2d 901, 906; Swanson v. 97 Fifth Ave. Corp., 141 N. Y. S. 2d 125,127, affd. 286 App. Div. 994; Traeger v. Farragut Gardens No. 1, 201 Misc. 18, 20-21). Notably, the effect of constructive *563 notice to the owner of the defective condition and the nature of its “ nondelegable ” duty did not bar it from indemnification.
Milford’s last contention, that as the owner’s agent it may not be held liable solely for nonfeasance by the owner, may not be raised for the first time on appeal. Milford and Milstein tried the case through joint counsel on the theory that together they stpod in the position of an owner for purposes of determining liability to plaintiff. Milford may not now assert otherwise, after casting its lot with Milstein on the trial (see, generally, 10 Carmody-Wait, N. Y. Civ. Prac. [2d ed.], § 70:300).
Although this case was tried before the decision by this court in Dole v. Dow Chem. Co. (30 N Y 2d 143), the rule of the Dole case is applicable to pending litigation (see Kelly v. Long Is. Light. Co., 31 N Y 2d 25, 29, n. 3). Consequently, if there were any basis for apportionment of liability between Otis and the owner or manager, Otis would be entitled to such apportionment, even at this late date. But there is no such basis.
The very ground of Otis’ liability, the exclusive duty to maintain the elevators, for breach of which duty it was cast in judgment, means that the owner and manager had the right, under the maintenance contract, to look to Otis to perform their entire duty to plaintiff. Because by reason of statute (Multiple Dwelling Law, § 78), their obligation to plaintiff was nondelegable, they were powerless, as against plaintiff, to avoid liability no matter how extensively they delegated their responsibility to however independent a maintenance contractor. Put another way, the statute had the effect of imputing to them the negligence of any delegate insofar as plaintiff’s rights to recover were concerned, but only to that extent.
On the other hand, as between Otis and the owner or manager, Otis had a contractual obligation to perform its duty of maintenance, for breach of which the owner and manager were held in damages to plaintiff in the first instance. For this breach of duty and the resulting liability of the owner and manager, Otis should be and is liable for the full amount (e.g., Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414, 419, affd. 298 N. Y. 686; Waylander-Peterson Co. v. Great Northern Ry. Co., 201 F. 2d 408, 416 [CA8]; see Prosser, op. cit., supra, § 51, p. 311; 28 N. Y. Jur., Indemnity, § 16, at p. 43).
*564 True, as noted at the outset, the maintenance agreement provided that Otis would not be liable for “ consequential damages To the extent that the provision purports to limit Otis’ liability on the claim over, however, the provision is voided by section 5-323 of the General Obligations Law. That section prevents an independent contractor from exempting itself from liability for its own negligence for work performed in maintaining real property or appurtenances to real property (see Melodee Lane Co. v. American Dist. Tel. Co., 18 N Y 2d 57, 68-70). Moreover, if it were not invalid the consequential damages clause, taken in context, would require a narrow reading limiting the elevator company’s liability only as to damages consequential to its failure to perform, as, for example, the cost of substitution of disabled elevators, and not relieving it of liability for the harm directly caused by its own breach (see Ciofalo v. Vic Tanney Gyms, 10 N Y 2d 294, 297; Boll v. Sharp & Dohme, 281 App. Div. 568, 570-571, affd. 307 N. Y. 646; 17 C. J. S., Contracts, § 262).
The rule of apportionment in the Dole case (30 N Y 2d 143, supra) was not intended to and should not be read to vary the substantive duties, as distinguished from the scope of liability for damages and their apportionment, among tort-feasors who are jointly and severally liable whether by virtue of respondeat superior, imputed negligence, or concurrent fault. The rule of apportionment applies when two or more tort-feasors have shared, albeit in various degrees, in the responsibility by their conduct or omissions in causing an accident, in violation of the duties they respectively owed to the injured person. (Of course, the rule may be modified by a valid agreement for contractual indemnity.) The Dole case, in overruling the use of active-passive terminology for purposes of indemnification in cases involving vicarious liability, imputed negligence, and the like, was largely rejecting a terminology that had caused confusion. The confusion arose because the antonyms seemed to stress the difference between affirmative and negative conduct instead of weighing the respective degrees of fault, most often treated as primary or secondary. The confusion, however, did not result necessarily in the wrong application of governing principles. On the contrary, the pre-Dole cases would, for the most part, categorize nicely under the primary-secondary analysis, the classic analysis and the one common to the rest of the Nation. *565 This analysis is supported by that made by Prosser in his discussion of indemnity (Prosser, op. cit., supra, § 51[2]; Restatement, Restitution, §§ 95, 96; see, also, Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 11 A D 2d 220, revd. 9 N Y 2d 426).
The rule in the Dole case had, primarily, of course, the dramatic effect of allowing comparative apportionment among joint tort-feasors even where their respective degrees of responsibility for the accident were not equal. To this extent the rule in the Dole case went beyond merely correcting the peculiar New York development of “ active and passive ” negligence terminology and doctrine in third-party liability and practice (for an analysis of that development, see Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 11 A D 2d 220, supra). It was hardly intended to overturn basic and satisfactory principles of com *566 mon-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm. In short, the apportionment rule applies to those who ifi fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or, as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it.[3]
It should perhaps be added that there is no suggestion that section 78 of the Multiple Dwelling Law, in making the building owner liable for the safe maintenance of the building, was intended to make the owner share liability with its delegate. That is a matter subject to the particular 1 ‘ private ” contract between owner and maintenance company. A public purpose of the statute, as construed by the courts, is to make sure that an injured person may always look to an owner as well as any delegate. At any rate, the Beinhocker case (296 N. Y. 925, supra) and the other cases cited earlier in the discussion of Beinhocker, demonstrate that even before the Dole case, an owner was entitled to recover entirely by way of indemnification for breaches of duty by a service company to which it had delegated fully its responsibilities for the maintenance of elevators.
On this analysis, as between Otis and its codefendants it is wholly responsible and no apportionment of the judgment among them is indicated, under the rule of apportionment in the Dole case. Nor is contribution under the contribution statute governing judgments against codefendants relevant (CPLR 1401). The reason is the same. The concern is presently with claims over in indemnity practice and not with joint judgments against codefendants guilty of concurrent tortious conduct.
Accordingly, the Appellate Division order should be modified by reinstating the judgment of plaintiff against Otis, and granting judgment for defendants Milstein and Milford, on their cross claim against Otis, with costs in favor of the prevailing parties.
Chief Judge Fuld and Judges Burke, Jasen, Gabrielli, Jones and "Wachtler concur.
*567 Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiff-respondent-appellant and to defendants-appellants payable by defendant-respondent Otis Elevator.

. Prosser, Law of Torts [4th. ed.], pp. 213-214.

. The entire section by Prosser is worth reading, but the following paragraphs especially deserve repeating here:
“There is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead. The two are often confused, and there are many decisions in which indemnity has been allowed under the name of ‘ contribution.’ One of the common, and simple, bases for indemnity is a contract which provides for it. The right to indemnity may, however, arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory. Although the ancient specious argument that the courts will not aid one tortfeasor against another because no one should be permitted to found a cause of action on his own wrong, would appear to apply quite as fully to indemnity as to contribution, the courts have been much more disposed to reject it where indemnity is involved.
“ Thus it is generally agreed that there may be indemnity in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant or an independent contractor; or an innocent partner or carrier is held liable for the acts of another, or the owner óf an automobile for the conduct of the driver. Likewise where one is directed or employed by another to do an act not manifestly wrong, or is induced to act by the misrepresentations of the other, he is uniformly entitled to indemnity when a third party recovers against him.
“ The principle is not, however, limited to those who are personally free from fault. A similar rule has been applied to indemnity against a supplier of goods when-a retailer or user of the goods incurs liability by reason of negligent reliance upon his proper care. The same is true where the owner of a building negligently relies upon a contractor who makes improvements or repairs.” (pp. 310-312).

. See, to the same effect, Margolin v. New Tork Life Ins. Co., 32 N Y 2d 149, 153, n. 1.