[740 NYS2d 56]

KOREN-DIRESTA CONSTRUCTION CO., INC., Appellant, v NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, Respondent.

First Department, April 9, 2002

APPEARANCES OF COUNSEL

*Seth A. Levine* of counsel, Garden City (*Keith H. Richman* on the brief; *Albin & Richman, P.C.,* attorneys), for appellant.

*Douglas J. Lutz* of counsel (*John F. Grubin* on the brief; *Wasserman, Grubin & Rogers, LLP,* attorneys), for respondent.

## OPINION OF THE COURT

RUBIN, J.

This dispute concerns the application of the notice of claim requirement imposed by Public Authorities Law § 1744 (2), specifically, the question of when the three-month period to file a notice of claim began to run against plaintiff. The subject of the action is a contract pursuant to which plaintiff Koren-DiResta Construction Co. was to construct a school (P.S. 92 in Queens) for a total base price of $21,935,821. The notice of claim at issue was served on March 15, 1995.

Defendant New York City School Construction Authority is an agency created specifically for the purpose of constructing schools within the City of New York (*see, Westchester Cr. Corp. v New York City School Constr. Auth.,* 286 AD2d 154, 159, *lv granted* 97 NY2d 607), and this project was among the first it undertook. Although the complaint states six substantive causes of action against the School Construction Authority,* as defendant recites in its brief, it involves three essential claims: "(1) approximately $1.3 million in contract balance, (2) $650,000 in acceleration and impact costs, also known as delay damages, and (3) $1.7 million in extra work."

This matter proceeded to trial in November 2000. At the close of plaintiff's case, defendant moved to dismiss the complaint on the ground that the evidence established that the notice of claim had not been timely served. Plaintiff's evidence included a certain request for payment (number 40) dated June 3, 1994. The amount billed ($223,867), together with the 5% retainage defendant was entitled to withhold under the

---

\* The seventh through thirteenth causes of action each recite that plaintiff has no adequate remedy at law. The fourteenth cause of action seeks legal fees, costs and disbursements.

contract ($1,086,189), represents a total balance due on the contract of $1,310,056. As to delay damages, a letter dated March 31, 1994 from plaintiff's president to defendant's project officer, annexed to the complaint, reflects a total of $646,307 in impact and acceleration costs. While the time at which the amounts claimed for extra work became known is less clear from the record, plaintiff does not contest Supreme Court's factual finding that "[t]he extra work claim is set forth in [plaintiff's] Exhibits 46 to 218. The last of which is dated March 31, 1994."

Supreme Court held that, for purposes of filing a notice of claim pursuant to Public Authorities Law § 1744 (2), "[t]he accrual date of the claim is controlling. * * * The law is that the claim accrues when it is ascertainable or no [later] than when a final requisition for payment is made." The court held plaintiff's notice of claim, filed on March 15, 1995, to be untimely, noting that all three items preferred as damages were ascertainable "prior to December, 1994 or more than three months before the notice of claim is dated."

On appeal, the parties are in agreement that the running of the three-month period for filing a notice of claim begins with the date that a construction project is substantially completed. They disagree, however, on the date established by the evidence in this case. Plaintiff notes that defendant "was still issuing change orders in January 1996" (following issuance of a final certificate of occupancy in November or December 1995) and emphasizes that its final payment requisition (number 41) was actually submitted on January 24, 1995. Plaintiff therefore contends that its work should not be considered substantially complete before that date (citing *Phillips Constr. Co. v City of New York*, 61 NY2d 949, 951). Defendant School Construction Authority points to the contradictory trial testimony given by plaintiff's president that the project was virtually completed in May 1994.

Supreme Court's dismissal of plaintiff's action is predicated on a distinction, delineated in *Matter of Board of Educ. (Wager Constr. Corp.)* (37 NY2d 283, 291), between the accrual of a claim for the purpose of serving a notice of claim (when damages are ascertainable) and accrual of a cause of action for the purpose of starting the running of the six-year contract statute of limitations (when payment is refused and the contract thus breached). It is not disputed that the statute of limitations in this matter began to run when defendant indicated that full payment would be not be forthcoming (*Kassner & Co. v City of*

*New York*, 46 NY2d 544, 550). What is at issue is the date on which plaintiff knew it had been damaged for the purpose of establishing the start of the three-month period to file a notice of claim, which is a condition precedent to the commencement of an action against a public benefit corporation (*see, Zoll v Suffolk Regional Off-Track Betting Corp.*, 259 AD2d 696, 696-697), municipal corporation (General Municipal Law § 50-e; *see, Davidson v Bronx Mun. Hosp.*, 64 NY2d 59, 61) or city Board of Education (Education Law § 2550 *et seq.*; § 3813 [2]; *see, Nu-Life Constr. Corp. v Board of Educ.*, 204 AD2d 106, *lv dismissed* 84 NY2d 850).

A cause of action in contract accrues on the date on which it is breached. It is recognized that some difficulty may be encountered in establishing the date of breach because the resulting damages may be incapable of assessment on that occasion. As stated in *Phillips Constr. Co. v City of New York* (61 NY2d, *supra* at 953 [Cooke, Ch. J., dissenting in part]), "the Statute of Limitations begins to run when an injury occurs so that the party knows that a suit may be brought, although the full amount of damages may not be known at the time (see *Martin v Dierck Equip. Co.*, 43 NY2d 583, 591)." Two factors assist the prospective plaintiff. First, the law permits suit to be brought seeking only nominal damages, avoiding the need to fix the amount (*see, e.g., Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 95 ["Nominal damages are always available in breach of contract actions"]). Second, a liberal limitations period is afforded (CPLR 213 [2]).

The various statutes requiring notice within three months of the date of the underlying injury all measure the time period from "the accrual of such claim" (Public Authorities Law § 1744 [2]). According to the rule laid down in *Matter of Board of Educ. (Wager Constr. Corp.)* (*supra* at 291), a contractor's claim "accrues" when it can ascertain the amount appropriate as compensation for the items of work performed. For purposes of the notice of claim, it matters not one wit that no breach has yet occurred, such as the refusal to pay for the work in question, a consideration pointedly raised by the dissenter in *Phillips Constr. Co. v City of New York* (*supra* at 954 ["no cause accrued until the owner refused to pay all that was requested"]). Chief Judge Cooke went on to state (at 954-955):

> "The majority apparently proceeds on the theory that there is a difference in suing for breach of contract and on presenting a claim arising under the contract (p 951, n 2). No matter how one

> phrases the description, the gravamen of any contract action is that one party claims that it is owed certain obligations because of the agreement and that the other party has not performed those obligations. No one can successfully prosecute a 'claim arising under the contract' unless the other party has committed a 'breach of contract.' In short, the purported distinction does not exist."

Seemingly lost in the procedural morass in which plaintiff finds itself is the "salutary purpose" to be served by notice of claim provisions, which permit "municipal defendants to conduct an investigation and examine the plaintiff with respect to the claim * * * and to determine whether the claims should be adjusted or satisfied before the parties are subjected to the expense of litigation" (*Davidson v Bronx Mun. Hosp.*, 64 NY2d 59, 62). As the record in this matter makes clear, defendant Authority exercised comprehensive oversight of the construction project, maintaining senior managers and "full-time personnel on the site inspecting [its] work," which inspection was "done on a daily basis." In addition, the project was subject to inspection by the Facilities and Inspection Department, by the architect, and by mechanical engineers, consultants and other agents acting on behalf of defendant. Finally, plaintiff contractor held biweekly job meetings with defendant Authority in addition to coordination meetings conducted with defendant's agents. Given the degree of oversight, it is difficult to imagine what might be gained by further investigation of work items.

The absence of any prejudice to defendant from the lack of notice is not dispositive, however. Where an agency has received sufficient information concerning a particular claim, substantial compliance is sufficient with respect to the details that must be included in the notice; "the proper public body or official" must still be given the requisite notice, a burden which is not lifted "simply because no prejudice has resulted, 'even to avoid a harsh result' " (*Parochial Bus Sys. v Board of Educ.*, 60 NY2d 539, 547-548, quoting *P.J. Panzeca, Inc. v Board of Educ.*, 29 NY2d 508, 510).

The contractor who hopes to retain the right to bring suit on any item for which payment might be disputed is confronted with the necessity to file a notice of claim, "at the latest," within three months of submitting its bill for such services (*Giampilis Contr. Co. v New York City School Constr. Auth.*, 211 AD2d 524). The contractor in this case submitted a total of over 350

change estimates for approval, some of which took over a year to be processed by defendant. Plaintiff's president testified, for example, that change estimate number 10 was submitted on February 23, 1993 and was not approved until April 4, 1994. Presumably, to preserve its right to dispute the adequacy of compensation for the necessary changes, plaintiff should have filed a notice of claim with respect to each of the 180 change estimates it submitted to defendant that were not approved. It is difficult to fathom how such a practice would further the Authority's mandate "to improve the efficiency, economics and quality of the process by which the city's schools are renovated and constructed" (New York City School Construction Authority Act, L 1988, ch 738, § 1).

The School Construction Authority should bear in mind that the relationship between parties to a commercial venture is not governed primarily by rules of law. Rather it is governed, first and foremost, by rules of economics. And one of the primary tenets of the dismal science is that there is no such thing as a free lunch. The agency seeks to avoid litigating the extent of its obligation to pay some $3.8 million to the contractor, an amount in excess of 15% of the contract price. It is immediately apparent that defendant's success would visit "a harsh result" upon plaintiff (*P.J. Panzeca, Inc. v Board of Educ.*, *supra* at 510). However, should defendant prevail, its apparent success would be a Pyrrhic victory, the unfortunate consequences of which will ultimately inure to the people of the City of New York.

Should it generally be perceived that a party to an agreement with defendant is unable to obtain redress for the agency's breach of a construction contract, prudent economic practice dictates that an amount be added to bids submitted in connection with any school construction project as an allowance for such a contingency. Second, if it should be perceived that the agency has a reputation for failing to honor its contractual obligations (with apparent impunity), only contractors truly desperate for work will resort to submitting bids on any school construction project. Finally, though perhaps the least harmful effect of the agency's success in avoiding litigation will be to reward it for its inefficiency. Failure to make prompt decisions on items submitted for payment, thereby running the three-month notice period of Public Authorities Law § 1744 (2), obviates the need to justify its legal position in court. The practical result of these effects is that the taxpayers of the City of New York will continue to pay inflated costs for

poor quality facilities constructed by an inefficient bureaucracy. Anomalously, this is exactly the situation the New York City School Construction Authority was designed to remedy.

In creating defendant Authority, the Legislature stated that "limitations on the construction process have proven to be inefficient, wasteful and incapable of yielding quality construction on time and at a reasonable cost" (New York City School Construction Authority Act, L 1988, ch 738, § 1). It further noted that "many construction companies have been unwilling to engage in construction because of outmoded requirements and unfair contract requirements. Accordingly, the legislature declares that a priority of the new authority should be to establish a more equitable procedure for dispute resolution" (id.). Whatever merit to the Authority's dispute with plaintiff ultimately emerges, this case unequivocally demonstrates a clear disregard for the legislative mandate.

This Court is disinclined to permit defendant to subvert the Legislature's good intentions to the detriment of the taxpayer. It has been observed that the "parties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied" (Martin v City of Cohoes, 37 NY2d 162, 165). "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights" (Matter of New York, Lackawanna & W. R.R. Co., 98 NY 447, 453; Mann v R. Simpson & Co., 286 NY 450, 459). In its brief, defendant concedes that plaintiff "contractor's claims accrued upon completion of the work." The issue before us, therefore, is when the work was substantially completed.

Where the parties have reduced their agreement to writing, the contract constitutes the best evidence of what they intend (Slamow v Del Col, 79 NY2d 1016, 1018, affg 174 AD2d 725). Any dispute between the parties arising out of the performance of the contract should be resolved by reference to its terms. "Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party" (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 67-68).

Fittingly, the agreement in this case expressly defines "substantial completion" as "the date certified by the Authority when construction is sufficiently complete, in accordance with

the Contract Documents, so that the occupant can occupy or utilize the Work for the use for which it is intended." Article 2, entitled "Contract Documents," provides that notices required by the contract shall be given by hand or by certified or registered mail, return receipt requested.

The parties having agreed that the operative question on appeal is when the work was substantially completed and having defined that time, in the contract, as the date defendant certifies completion, the disposition of this matter is apparent. Defendant never certified the work as complete. The record contains no notice of the "substantial completion" of the work as specified in the agreement, and defendant does not assert that any such notice was ever given. Defendant failed to abide by the contractual requirement to declare the project substantially completed. As a result of that omission, the work was not substantially complete at the time plaintiff served its notice of claim, which is therefore timely under the terms of the agreement between the parties.

As a final note, the terms of the contract suggest that it was drafted with an appreciation of the artificial distinction drawn between accrual of an action on the contract and accrual of a claim. Article 16, entitled "Payment," provides:

> "After the Authority has determined that the Work is substantially complete, the Contractor shall submit to the Authority, for the Authority's approval, a detailed estimate of the value of the known remaining items of Work as set forth by the Authority and a schedule of completion for said items of Work. The Authority shall review that estimate and make the final determination." (§ 16.01 [D].)

Section 16.02 of the contract provides that "acceptance by the Contractor of the first payment pursuant to Section 16.01D shall operate as a release to the Authority of all claims by and all liability to the Contractor" in connection with the contractor's performance of its obligations under the contract.

The agreement directs that defendant will give plaintiff notice that the Authority has certified the project as substantially complete. It provides that the Authority will then make a "final determination" and pay to the contractor the balance under the contract, less an amount to be held back for work remaining to be performed together with "an amount necessary to satisfy any and all claims, liens or judgments against the

Contractor." The contract expressly provides that acceptance of the ensuing payment by the contractor constitutes a waiver of any claims it might possess against defendant.

The use of the term "final determination" does not appear to be merely fortuitous. It is well settled that a claim against an agency does not arise until its decision becomes final and binding upon the claimant (*see, e.g., A.C. Transportation v Board of Educ.*, 253 AD2d 330, 337, *lv denied* 93 NY2d 808 ["no indication that the Board had made a final determination"]). Use of this language evinces an intent that any claim with respect to the adequacy of payment will accrue at such time as the agency issues its final determination. Furthermore, the contract contemplates that the tender of payment by the Authority will have one of two distinct consequences: either the contractor will accept payment, resulting in a waiver of any claims against defendant Authority, or the contractor will reject payment and thus preserve its claims. The express requirement that the contractor elect to waive or pursue a claim at this juncture further indicates that the parties intended that any such claims shall either be waived or shall accrue at this time.

Accordingly, the judgment of the Supreme Court, New York County (Leland DeGrasse, J.), entered February 28, 2001, which dismissed the complaint, with prejudice, and awarded costs to defendant, should be reversed, on the law, without costs, judgment vacated, the complaint reinstated, and the matter remanded for trial. Appeal from the order, same court and Justice, entered January 26, 2001, which granted defendant's motion for judgment pursuant to CPLR 4401 dismissing plaintiff's complaint, should be dismissed, without costs, as subsumed in the appeal from the judgment.

NARDELLI, J.P., BUCKLEY, ELLERIN and LERNER, JJ., concur.

Judgment, Supreme Court, New York County, entered February 28, 2001, reversed, on the law, without costs, the judgment vacated, the complaint reinstated, and the matter remanded for trial. Appeal from order, same court, entered January 26, 2001, dismissed, without costs, as subsumed in the appeal from the judgment.