■ ARLENE KARIAN, Respondent, v G & L REALTY, LLC, et al., Defendants, and P&E ELEVATOR Co., INC., Doing Business as HORIZON ELEVATOR Co., Appellant. [820 NYS2d 231]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered on or about November 16, 2005, which denied the motion by defendant P&E Elevator Co., Inc., doing business as Horizon Elevator Co. (P&E), for summary judgment dismissing the complaint and all cross claims as against it, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of P&E accordingly.

Plaintiff alleges that, on August 26, 2001, she was injured when she fell from a misleveled elevator cab in the building at 170 West 73rd Street in Manhattan. For a period of about a year and a half ending almost a month prior to plaintiff's mishap, defendant P&E had a contract to service elevators in the

building.[1] Both P&E's former president and the superintendent of the building testified, without contradiction, that, during the term of P&E's service contract, the building staff never notified P&E that any of the elevators in the building were misleveling. Further, plaintiff did not offer any expert evidence that P&E, while its service contract for the building was in effect, should have discovered and corrected any condition of the elevator mechanism in question. Since the record contains no evidence of any negligence by P&E, much less evidence that any such negligence was a substantial factor in causing plaintiff's accident, P&E was entitled to summary judgment dismissing the complaint and all cross claims as against it.

In arguing for a contrary result, the dissent focuses on certain matters appearing in the record that—however relevant they may be to other aspects of the case—do not show that P&E, while its contract was in effect, had notice of a specific defect in the subject elevator that may have been the cause of plaintiff's accident. We recognize, of course, that plaintiff and other residents of the building testified that they noticed that the subject elevator was misleveling during the term of P&E's contract, and that they notified building personnel of this problem. Such testimony, while obviously raising an issue as to whether the building's owner/manager had notice of a misleveling problem, simply does not constitute evidence that the owner/manager (assuming it had such notice) notified P&E of the problem. In this regard, we note that there is no claim that communications between the owner/manager and P&E were within the knowledge of the complaining tenants. In sum, the flaw in the dissent's position is in equating notice to the owner/manager with notice to P&E. Further, we reject the dissent's view that the possibility that the trier of fact will discredit the building superintendent's testimony suffices to raise a triable issue as to whether the superintendent notified P&E of the elevator problems to which the tenants testified. By the dissent's reasoning, testimony to any fact constitutes evidence of both that fact and its opposite; if this were the law, summary judgment could never be granted.

Nor is it of any help to plaintiff that an expert with the

---

**1.** The dissent, pointing to P&E's receipt from the building of a termination letter dated August 10, 2001, complains that we "inaccurately" state that P&E's contract was terminated "almost a month" before plaintiff's accident on August 26. The dissent's complaint is without merit. P&E's former president testified that a representative of the building's management company told him "verbally" that P&E was "off the building" as of August 1, 2001. The termination was subsequently confirmed by the letter of August 10 to which the dissent refers.

company the owner/manager hired to modernize the building's elevators characterized them as, "[i]n general, . . . extremely old, neglected, in disrepair and in need of elevator modernization." Neither plaintiff nor the dissent points to any testimony by this expert, or any one else, identifying a specific cause of the accident. Nor is there any offer of proof that the cause of plaintiff's accident existed while P&E still had responsibility for the elevators, and that such cause should have been detected by P&E in the course of its monthly maintenance.

We reject the dissent's assertion that further discovery is warranted. In this regard, we note that no basis exists for holding P&E responsible for the dearth of documentary evidence of its service to plaintiff's building. There is no suggestion that P&E can be held responsible for the building superintendent's destruction of his copies of P&E's work tickets, or for his failure to keep any log of communications with P&E and its work in the building. With regard to P&E's work records, which are being held by the New York County District Attorney, plaintiff does not suggest when such records may become available for use in this action, nor do her attorneys detail any efforts they have made to obtain access to these records. Thus, the dissent's suggestion that such records "may be subject to production" is nothing but unsupported speculation. In fact, not even plaintiff has argued that she should be afforded additional time for discovery, nor has plaintiff claimed that there is a reasonable likelihood that additional discovery would yield any more relevant evidence. In this regard, we note that the dissent's suggestion that "[p]laintiff may be able to discover the identity of other employees who may have conveyed the tenants' complaints to P&E" finds no echo in plaintiff's brief, and is not supported by a whit of evidence. In addition, while the dissent seems to be concerned that P&E's contract has (according to plaintiff) "mysteriously disappeared," the dissent does not suggest any way in which this document could bear upon the issue presented by this appeal. There is no dispute that P&E had responsibility for maintenance of the elevators while its contract was in effect; the problem for plaintiff and the dissent is that P&E's contract was terminated nearly a month before plaintiff's accident.

We do not question the well-settled principle that circumstantial evidence will suffice to support an inference of negligence where the defendant company has "exclusive control" of elevator maintenance (*Rogers v Dorchester Assoc.*, 32 NY2d 553, 561 [1973]). That principle is limited, however, to cases where such "exclusive control" by the defendant exists at the time of the

accident, as was true in *Rogers*.[2] On this appeal (which concerns the potential liability of P&E only), the dissent's reliance on the *Rogers* principle is misplaced precisely because P&E did *not* have "exclusive control" of elevator maintenance at the time of the accident. Again, P&E's contract was terminated nearly a month before the accident, at which time a new company (which plaintiff is also suing) assumed "exclusive control" of elevator maintenance in the building. Our decision in *Macon v Arnlie Realty Co.* (190 AD2d 642 [1993]), which the dissent cites, does not stand for the proposition that negligence may be inferred from nothing more than the fact that an elevator maintenance company was responsible for the subject elevator until a relatively brief period of time before the plaintiff's accident. In order to defeat a well-supported summary judgment motion by an elevator maintenance company whose responsibility ceased prior to the accident, a plaintiff must be able to point to specific evidence from which it may reasonably be inferred that such company, while its contract was in effect, was negligent in the discharge of its duties, and that such negligence was causally related to the plaintiff's accident. Here, plaintiff, who fails to offer any explanation for the cause of her accident, points to no such evidence. Concur—Friedman, Sullivan, Gonzalez and McGuire, JJ.

Tom, J.P., dissents in a memorandum as follows: The majority holds plaintiff to an inappropriately high standard of proof. The majority's ruling would, in effect, permit defendant Servi-Tek Elevator Corp., previously under contract with the building owner, to avoid liability by the mere expedient of equivocally asserting that proof of complaints of elevator misleveling is lacking, completely discounting the probative value of the numerous

---

2. The dissent quotes a dictum from *Corcoran v Banner Super Mkt.* (19 NY2d 425, 431 [1967] [which presented an issue of concurrent control, not successive control]), in which the Court of Appeals referred to the holding of a California case that concerned a manufacturer's liability for an exploding soda bottle. The dissent also relies on *Markel v Spencer* (5 AD2d 400 [1958], *affd* 5 NY2d 958 [1959]), a case concerning Ford Motor Company's liability for a defective automobile it had manufactured. We do not believe that either the *Corcoran* dictum or *Markel* allows plaintiff to proceed on a res ipsa loquitur theory against an elevator contractor that neither manufactured the elevator in question, nor had exclusive control of its maintenance for nearly a month before the occurrence of the accident. *Swensson v New York, Albany Despatch Co.* (309 NY 497 [1956]), which the dissent also cites, held that a vehicle's brake failure provided a basis for inferring negligence on the part of the company that, after repairing and reconditioning the vehicle, had relinquished control of it on the very day of the accident. In this case, P&E had not had control of the elevator's maintenance, and another company did have such control, for about 26 days prior to plaintiff's accident.

complaints made by the tenants, during Servi-Tek's contract period, to defendant owner concerning this defective condition.

In August 2001, plaintiff, then 68 years old, fell while getting off the elevator in the lobby of 170 West 73rd Street in Manhattan, sustaining a fractured tibia and a medial meniscus tear. Plaintiff alleges that the elevator cab had stopped at least 12 inches above the level of the lobby floor. At her deposition, plaintiff testified that she had personally registered numerous complaints with building employees, including the superintendent, about "chronic" elevator misleveling during the two-year period before the accident.

Defendant P&E Elevator Co., doing business as Horizon Elevator Co., provided all elevator maintenance services to the premises under an agreement that had been in effect for approximately a year and a half and was terminated by building management approximately two weeks before the accident. The record discloses that defendant owner terminated P&E's maintenance contract by letter dated August 10, 2001, and plaintiff was injured on August 26, 2001. Therefore, P&E's contract officially ended approximately two weeks before the accident, not "almost a month" before, as inaccurately stated by the majority. The contract is not included in the record and its terms are unknown. However, it seems that an unsuccessful attempt was made to obtain the contract because plaintiff's brief states that the document has "mysteriously vanished."[1]

At his examination before trial, P&E's president testified that maintenance was performed on a monthly basis and that P&E responded to reported problems as needed. When asked whether P&E had ever responded to a complaint about misleveling, he answered, "I don't know." He further revealed that P&E had ceased operations in 2001 and that the company's records were subsequently seized by the Manhattan District Attorney's office under circumstances that have not been disclosed. The records have not been returned.

It is undisputed that P&E's maintenance contract was canceled because defendant Robert Elevator was the low bidder on a contract for the modernization of the building's elevator system. A nonparty witness employed by Vertical Systems Analysis testified that he became involved with the project at least six months before plaintiff's accident, that he had testified as an expert on elevators and escalators on more than one occasion over the preceding five years, and that the elevators were

---

1. The nature of the contractual duty undertaken by P&E is pertinent to its liability pursuant to *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579, 589 [1994]).

extremely old, neglected and in a state of disrepair. He had no need to examine the repair history because the turn-of-the-century elevators had far exceeded their life expectancy, and modernization was "a foregone conclusion."

The building's superintendent testified that while he signed off on elevator repairs and was given a copy for his records, he destroyed them after P&E's contract was terminated because he had no space to store them. He did not keep a maintenance log for the elevators or a record of complaints received from tenants.

P&E's primary basis for seeking summary judgment dismissing the complaint (CPLR 3212) was that its contract with the building's manager had been terminated. Thus, it argued, it could not be held responsible for plaintiff's injuries. P&E further maintained that its actions did not contribute to the accident and that proof of complaints of elevator misleveling by the tenants was lacking.

In opposition to the motion, plaintiff submitted affidavits from four witnesses who had observed misleveling of the elevators. One tenant, a 30-year resident of the building, averred that since she lived there, she regularly experienced problems with the elevator including the elevator stopping "about $2^{1}/_{2}$ inches above or below the floor level." Another tenant stated that over the course of his 50-year residence in the building, he had experienced the elevator stopping higher and lower than the floor level.[2] This tenant, who came upon the scene shortly after plaintiff fell, stated that the elevator was "approximately 12 inches higher than the lobby floor." A third tenant stated that she was present when plaintiff got out of the elevator on the day of the accident and "noticed that the floor of the elevator was approximately four to five inches above level. The woman fell out of the elevator, towards me." A visitor to the building stated that, just three days before the accident, he was present in the lobby while someone was trapped in the same elevator, prompting a woman to call 911 for emergency assistance.

At her deposition, plaintiff testified that she had seen the elevator misleveling many times during the two-year period before the accident and that it was a "chronic" problem. She further testified that she had personally registered numerous complaints with building employees about elevator misleveling, and that the superintendent had agreed to take care of it.

---

**2.** I state the duration of the respective tenancies to show that the misleveling problem is not a recent anomaly.

The liability of a service company to a third party is stated in *Palka v Servicemaster Mgt. Servs. Corp.* (83 NY2d 579, 589 [1994], *supra*): "when a party contracts to inspect and repair and possesses the exclusive management and control of real or personal property which results in negligent infliction of injury, its assumed duty extends to noncontracting individuals within the zone and contemplation of the intended safety services." The termination of P&E's contract is not dispositive of its liability to plaintiff. As this Court held in *Macon v Arnlie Realty Co.* (190 AD2d 642, 642-643 [1993]): "The mere fact that defendant-appellant elevator maintenance service company ceased to be in possession and exclusive control of the elevator area where the accident occurred approximately three months prior to the accident does not absolve it of liability as a matter of law. Appellant can still be liable if it had knowledge of the alleged dangerous conditions surrounding the elevator and its appurtenances that it was contractually obligated to correct, and if it failed to ameliorate such conditions or alert the landlord's agent of their existence before its cancellation of the service/ maintenance contract" (*accord Bilan v Klein*, 250 AD2d 636 [1998] [elevator malfunction 68 days after maintenance contract expired], citing *Macon* and *Vogel v Herk El.*, 238 AD2d 506 [1997] [elevator, serviced by another company, repaired by defendant over four months prior to accident]).

At issue is the degree of proof necessary to hold an elevator maintenance company liable for an injury to a noncontracting individual. The parties agree that the liability of an elevator maintenance company for an injury sustained by a passenger is governed by *Rogers v Dorchester Assoc.* (32 NY2d 553 [1973]). As the Court of Appeals has observed, "parties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied" (*Martin v City of Cohoes*, 37 NY2d 162, 165 [1975]), which consent binds not only the parties but the courts (*Koren-DiResta Constr. Co. v New York City School Constr. Auth.*, 293 AD2d 189, 195 [2002], citing *Matter of New York, Lackawanna & W. R.R. Co.*, 98 NY 447, 453 [1885]). Thus, even accepting the majority's faulty premise that liability requires actual notice, the parties herein have agreed that, as stated in P&E's brief, "An elevator company is subject to liability for 'failure to use reasonable care to discover and correct a condition which it ought to have found' " (quoting *Rogers*, 32 NY2d at 559), without regard to actual notice.

Significantly, liability was imposed in *Rogers* without the introduction of any direct proof of negligence (*id.* at 557). The

*Rogers* court found testimony that an elevator door had malfunctioned in the six months preceding the plaintiff's accident to be sufficient circumstantial evidence to permit a jury to infer negligence by the elevator maintenance company (*id.* at 557-558, 561 [applying doctrine of res ipsa loquitur]). The Court stated, "An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found" (*id.* at 559). It is clear, contrary to the majority's intimation, that exclusive control over an instrumentality affords a basis for liability even if control has been relinquished at the time the instrumentality causes injury (*see Corcoran v Banner Super Mkt.*, 19 NY2d 425, 431 [1967] ["the exclusive control requirement does not necessitate such control at the time of the accident"]) and that the trier of fact can infer, on the basis of circumstantial evidence, that the defective condition should have been found and corrected (*Rogers*, 32 NY2d at 559, citing *Markel v Spencer*, 5 AD2d 400, 403 [1958], *affd* 5 NY2d 958 [1959], citing, at 405, *Swensson v New York, Albany Despatch Co.*, 309 NY 497 [1956]).

There is ample evidence that the subject elevator often misleveled, and a trier of fact could conclude that this was a condition that P&E should have discovered and remedied (*Rogers*, 32 NY2d at 559). P&E does not dispute that it handled all maintenance and undertook all repairs to the subject elevator during the approximately 18 months the contract was in effect, and it is clear from *Rogers* that where a company is in exclusive control of elevator maintenance, circumstantial evidence is sufficient to permit a jury to infer negligence (*id.* at 561).

There is an obvious factual discrepancy between P&E's suggestion that the dilapidated elevator system was well maintained and the testimony of Vertical System's expert that it was "extremely old, neglected, in disrepair and in need of an elevator modernization." A discrepancy also exists between the building superintendent's denial of any tenant complaints concerning misleveling and plaintiff's testimony that she had personally complained "many times" to the superintendent and other employees of defendant about misleveling, a problem corroborated by the affidavits from other tenants.

The record also presents a factual issue as to whether P&E received actual notice of the defective condition, which the majority improperly resolves as a matter of law. P&E's president did not deny that the company had received complaints about the misleveling of the subject elevator; he stated only that he

did not know if P&E had received any such complaints. P&E's assertion that there was no problem with elevator misleveling before the accident is based on the superintendent's deposition testimony. This evidence was questioned by the motion court and is starkly contradicted both by plaintiff's testimony concerning her numerous complaints to the superintendent and other building employees and by affidavits from other tenants regarding the elevator misleveling problem. The conflicting testimony presents an obvious credibility issue. If a jury concludes that the superintendent is not credible, it could further conclude that at least some of plaintiff's complaints were conveyed to P&E during the period its contract was in force. A jury could readily find implausible that building management would have failed to inform the maintenance contractor about a chronic defective condition that affected the operation of the building's elevators and compromised the safety of the tenants. What is particularly unsettling is that P&E's president does not deny that P&E received notice of elevator misleveling, that any work tickets for repairs. made to the subject elevator are unavailable because the building superintendent destroyed his copies, and that all of P&E's business records, including work tickets, are similarly unavailable because they were seized by the New York County District Attorney.

It is well settled that the function of a court on a motion for summary judgment is issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]; *Wiener v Ga Ro Die Cutting*, 104 AD2d 331, 333 [1984], *affd* 65 NY2d 732 [1985] *for reasons stated below*). The majority improperly resolves the factual question of what P&E should reasonably have discovered about the condition of the subject elevator as a matter of law. The evidence casts serious doubt on their conclusion that defects in the elevators, which were all too apparent to tenants and visitors to the building and to the consultant hired to evaluate the condition of the elevator system, completely evaded discovery—and were incapable of discovery in the exercise of reasonable diligence—by P&E in the course of its regular maintenance work.

The majority also improperly resolves, as a matter of law, the credibility of the building owner's allegation that tenant complaints about elevator misleveling were never communicated to P&E, precluding the trier of fact from drawing a contrary inference from the circumstantial evidence.

Finally, the majority determines, as a matter of law, the extent of P&E's contributory negligence, implicitly deciding that the assumption of elevator maintenance duties by Robert Elevator

relieved P&E of any liability for plaintiff's injuries, irrespective of the duration of the defective condition and any failure of P&E to discover and correct it. Nothing in our decision in *Macon v Arnlie Realty Co.* (190 AD2d 642 [1993], *supra*) suggests that an elevator maintenance company previously in control of a defective elevator must acquire its knowledge of the defective condition by actual notice in order to be subject to liability. Notably, we stated that the company is not "necessarily absolved of liability by reason of the landlord having contracted with a second maintenance company which conducted an inspection of the work area shortly before the accident" (*id.* at 643).

There is at least enough evidence of record to warrant further discovery. There is no reason to believe that the business records seized from P&E have not been preserved by the District Attorney's office. Thus, documentary evidence concerning P&E's knowledge of the misleveling condition may be subject to production. Furthermore, plaintiff testified that she lodged numerous complaints about misleveling with various building employees, not just the superintendent. Plaintiff may be able to discover the identity of other employees who may have conveyed the tenants' complaints to P&E. This matter is before us on appeal from the disposition of P&E's motion to dismiss the complaint, and the parties do not maintain that discovery has yet been completed.

Under the circumstances, P&E is not entitled to judgment as a matter of law. Accordingly, the order denying P&E's motion for summary judgment dismissing the complaint should be affirmed.