■ KIRKWOOD STEWART et al., Appellants, v WORLD ELEVATOR CO., INC., et al., Respondents. [922 NYS2d 375]—

---

Order, Supreme Court, Bronx County (Cynthia S. Kern, J.), entered on or about November 2, 2009, which, in an action for personal injuries allegedly sustained when the elevator car in which plaintiff Kirkwood Stewart was riding suddenly dropped, granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

Plaintiff Kirkwood Stewart (plaintiff), a security guard at the Fashion Institute of Technology (FIT), alleges that on July 18, 2006, he arrived at the building at approximately 5:38 A.M. and pressed a button to summon the elevator. The "A" building had two automatic elevators, designated as elevator No. 1 and elevator No. 2. When elevator No. 1 arrived, plaintiff entered and pressed the button for the 8th floor, intending to open up the rooms on the top floor and work his way down.

Before the elevator doors could open at the 8th floor, plaintiff alleges that the elevator cab suddenly dropped, causing him to fall and strike his head on the floor, which in turn caused him momentarily to lose consciousness. When plaintiff regained consciousness, he observed the elevator cab begin to move upward, passing the 5th and 6th floors, and finally stopping on the 7th floor. The elevator door, however, did not open on the 7th floor. Plaintiff, after unsuccessfully trying to press the button to open the doors, radioed the security desk for assistance.

Plaintiff's supervisor used a master key in order to lower the elevator to the ground floor, a process taking approximately 20 minutes, and then the supervisor, together with several other employees, had to pry open the elevator doors in order to release plaintiff. Plaintiff's supervisor's hand became jammed in the door during the attempt. Following his extrication from the elevator, plaintiff filled out an incident report and complainant/witness statement setting forth the details of the elevator malfunction. Immediately after the incident, plaintiff complained of head, neck and back pain, as well as a tingling sensation in the right hand.

On or about November 8, 2007, plaintiff and his wife commenced the instant action against defendants, alleging that they were negligent in inspecting, repairing and maintaining the subject elevator.

In April 2009, defendants moved for summary judgment dismissing the complaint, arguing, inter alia, that the incident, as described by plaintiff, was physically and mechanically impossible. Defendants relied on the deposition testimony of their resident mechanic, Michael Kavanagh. Kavanagh, however, did not start working for defendants until 2007, more than $1^{1}/_{2}$ years after the incident, and had no knowledge or information regarding defendants' inspection procedures on the date of the accident, nor of the condition of the elevator or equipment following the incident. Kavanagh "guessed" that defendants maintained maintenance records for "one year." The only record produced by defendants in response to discovery requests, however, was an excerpt from a "work log" as to which Kavanagh was incompetent to testify (and which appears nowhere in the record). Defendants stated that other than the work log they were in possession of no work orders, maintenance or repair records up through and inclusive of the date of the incident.

Defendants also relied on the affidavit from Joe D'Ambra, vice-president of defendant New World Elevator LLC and a licensed New York City elevator inspector. D'Ambra opined, to a reasonable degree of mechanical certainty, that in order for the elevator to have suddenly dropped, as plaintiff alleged, either (1) a cable would have to break and the emergency braking mechanism would have to fail, or (2) the elevator would have to be overloaded. D'Ambra discounted both possibilities. D'Ambra stated that it was clear none of the cables had broken, as the elevator operated normally immediately after the alleged incident, and there was no record of a shutdown. D'Ambra averred that it was clear the elevator had not been overloaded,

since plaintiff was alone at the time of injury, and the elevator's counterweights are designed to offset the weight of the cab plus 40% of its rated load. D'Ambra stated that no defect was ever found with the cables, governor or emergency braking device before or after the incident. D'Ambra thus opined that plaintiff's description of the alleged incident was neither physically nor mechanically possible.

In opposition, plaintiffs argued that defendants had failed to make a prima facie case, asserting that D'Ambra's statements were purely conclusory and based on hearsay information as to the alleged condition of the elevator following the accident. Plaintiffs asserted that defendants ought not to be able to invoke the absence of notice as a defense given defendants' exclusive and comprehensive maintenance duties in respect of the elevator. Plaintiffs argued that the doctrine of res ipsa loquitur applied since the misleveling or malfunctioning of an elevator does not ordinarily occur in the absence of negligence, the maintenance and operation of the elevator was within the exclusive control of defendants, and plaintiff in no way contributed to or caused the accident. Counsel annexed a buildings inspection report to his affirmation which revealed that on June 1, 2006, approximately one month before the accident, an unspecified defect was discovered during a routine elevator inspection at FIT.

Plaintiffs relied on the affidavit of John Clarke, an elevator mechanic and adjuster employed by nonparty City Elevator Company, with 38 years of experience in elevator installation, maintenance, and mechanical and electrical repair. Clarke opined, with a reasonable degree of mechanical certainty, that the failure of the elevator cab to properly function, as alleged by plaintiff, was "caused either by a defective door sensor; zone relay equipment installed in the elevator shaft and/or because of a contact failure relating to a defective door belt or motor installed on the top of the elevator cab," mechanisms designed to control the cab's movement to the proper floor and the ability of the door to timely open at the designated floor. These conditions were neither mentioned, ruled out nor addressed by defendants' expert.

Clarke opined, with a reasonable degree of mechanical certainly, that the elevator malfunction described by plaintiff "was mechanically and physically feasible and possible, and was clearly caused by defective parts" that would have been discovered by the defendants during the course of inspections. Clarke noted that defendants' expert entirely ignored the fact that the elevator had to be brought down to the lobby and the

doors forcefully pried open, demonstrating the existence of a defect. Clarke explained that the mechanical parts and safety devices identified in his affidavit as the cause of the accident can intermittently malfunction, explaining why plaintiff might not have experienced any problem with the elevator on the preceding day.

The motion court granted defendants' motion and dismissed the complaint. The court found that defendants made a prima facie showing that the accident could not possibly have occurred as alleged by plaintiff, and plaintiffs, in turn, had failed to raise a triable issue of fact, dismissing Clarke's expert opinion as "speculative." We hereby reverse and reinstate the complaint.

Defendants failed, prima facie, to establish entitlement to summary judgment. "An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found" (*Rogers v Dorchester Assoc.*, 32 NY2d 553, 559 [1973]). Defendants submitted virtually no evidence regarding the maintenance and inspection history of the elevator, either pre- or post-accident. The only document produced in response to discovery requests was a "work log" which was referenced during the deposition of Kavanagh—who, notably, was not competent to testify concerning defendants' maintenance and inspection practices at the time of the incident—and which does not even appear in the record. A defendant is not entitled to summary judgment on notice grounds where there is a failure to present sufficient evidence regarding its maintenance procedures in respect of an allegedly malfunctioning elevator (*see Green v City of New York*, 76 AD3d 508 [2010]).

Even without defendants' failure, plaintiffs' invocation of the doctrine of res ipsa loquitur raised a triable issue of material fact. Plaintiff testified that the elevator dropped suddenly, causing him to fall. When he regained consciousness, he notified the building superintendent of the emergency, and had to be lowered to the lobby level, where several persons had to pry the door open. Certainly, this is the type of event that does not ordinarily happen in the absence of negligence, and plaintiffs are entitled to invoke the doctrine as against defendants based on plaintiff's testimony concerning the elevator malfunction (*see e.g. Kleinberg v City of New York*, 61 AD3d 436, 438 [2009] [free-falling elevator is not an event that ordinarily happens in the absence of negligence]; *Miller v Schindler El. Corp.*, 308 AD2d 312 [2003] [applying doctrine where plaintiff testified that elevator

dropped suddenly, causing her to fall, notwithstanding defendant's evidence that the elevator was functioning immediately after the incident]).

The case of *Williams v Swissotel N.Y.* (152 AD2d 457 [1989]) is instructive. In *Williams,* the plaintiff was injured when the elevator on which he was riding dropped nine stories and abruptly stopped just below the lobby floor landing. Although one of defendant's principals maintained, as here, that the accident as described by the plaintiff was "physically impossible" due to the existence of certain safety features and the findings of a post-accident inspection revealing no "telltale markings" on the elevator cable, this Court found that the testimony of plaintiff was sufficient to support application of the res ipsa loquitur doctrine, stating that "the testimony of [plaintiff] as to how the elevator fell is sufficient evidence, if found credible by the trier of fact, to support the application of the doctrine" (*id.* at 458).

Plaintiff's testimony, as corroborated by the contemporaneous incident report and witness statement, was sufficient to allow a factfinder to determine that the misleveling and/or free-fall of the elevator was the kind of accident that would not ordinarily happen in the absence of negligence. Defendants had exclusive control over the mechanisms and devices in the elevator, and there is no evidence that the incident was due to any action on the part of plaintiff. The motion court thus erred in refusing to allow the case to proceed to trial on res ipsa loquitur grounds and in dismissing the complaint as a matter of law.

It was also error to dismiss the affidavit of plaintiffs' expert Clarke as "speculative." Clarke's affidavit was not speculative, but rather, constituted legitimate opposition by an opposing expert, refuting and challenging the claim that the accident was "physically and mechanically impossible." Mr. Clarke, who had 38 years of experience in elevator construction, installation, maintenance and repair, directly challenged the statements of D'Ambra that the accident was not physically or mechanically possible, and provided a list of possibilities that could have caused the misleveling, including mechanical functions that D'Ambra never ruled out, mentioned, or addressed. Further, D'Ambra, in rendering his expert opinion, entirely ignored the undisputed fact that it took 20 minutes to bring the elevator down to the lobby after it became stuck and that plaintiff's supervisor and several other security guards had to forcefully pry the doors open in order to free plaintiff. Concur—Mazzarelli, J.P., Andrias, Moskowitz, Richter and Manzanet-Daniels, JJ.